******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

Bright, C. J., and Alvord and Oliver, Js.

*Syllabus*

The plaintiffs sought, inter alia, to recover damages from the defendants,
A and W, for their alleged mismanagement of the finances of a company,
I Co., of which the parties together owned all of the shares. After the
plaintiffs initiated the action, A filed with the trial court a notice of
election to purchase the plaintiffs' shares of I Co. The parties then
executed a memorandum of understanding resolving the primary issues
of their dispute, which required that A make payments over time to the
plaintiffs in exchange for receiving the plaintiffs' shares in I Co. The
memorandum of understanding provided that the parties would enter
into a more detailed settlement agreement that would provide the neces-
sary terms to effectuate the plaintiffs' transfer of their shares to A. After
the parties appeared to have reached a full settlement, the defendants
did not sign a written settlement agreement and A did not make his
first payment. Subsequently, the plaintiffs filed a motion to enforce the
settlement agreement. In objection, A claimed that he never had the
funds to buy out the plaintiffs, and W claimed that the settlement was
always conditional upon A raising the necessary funds through a loan.
The court granted the plaintiffs' motion to enforce, and rendered judg-
ment in favor of the plaintiffs, from which the defendants appealed to
this court. *Held* that the defendants failed to establish that the trial
court improperly enforced the settlement agreement, which consisted
of the signed memorandum of understanding as supplemented by the
unsigned settlement document with attachments: the defendants pro-
vided neither law nor argument that the court was clearly erroneous in
its factual findings or incorrect in its legal conclusions, as the court, in
its memorandum of decision, discussed the communications submitted
to it by both the plaintiffs and the defendants, found that A had filed a
notice of election to purchase the plaintiffs' shares of I Co., to which
no shareholder had an objection and which A never sought to withdraw,
and it acknowledged that the defendants referenced A's pursuit of financ-
ing in a number of the communications, but refused to infer an unex-
pressed intent on the part of the defendants that obtaining financing
was a contingency to any settlement; moreover, the defendants signed
the memorandum of understanding, which provided that it contained
the essential terms of a settlement agreement between the parties that
would form the basis for a written agreement, but contained no contin-
gency for financing, and during negotiations of the final settlement
agreement, the defendants requested multiple changes, but none con-
cerned inserting language regarding the ability of the defendants to
obtain financing as a contingency of the settlement agreement.

Argued October 15, 2020—officially released January 5, 2021

*Procedural History*

Action to recover damages for, inter alia, breach of
fiduciary duty, and for other relief, brought to the Supe-
rior Court in the judicial district of Stamford-Norwalk
where the court, *Hon. Kenneth B. Povodator*, judge
trial referee, granted the plaintiffs' motion to enforce
a settlement agreement and rendered judgment for the
plaintiffs, from which the defendant Alexander Leute
et al. appealed to this court. *Affirmed.*

*William R. Leute III*, self-represented, the appel-
lant (defendant).

*Alexander Leute*, self-represented, the appellant (defendant).

*Richard S. Order*, with whom was *Valerie M. Ferdon*, for the appellees (plaintiffs).

*Opinion*

BRIGHT, C. J. The self-represented defendants, Alexander Leute and William R. Leute III,[1] appeal from the judgment of the trial court enforcing a signed memorandum of understanding as supplemented by an unsigned settlement document with its attachments (jointly, settlement agreement) made between the defendants and the plaintiffs, Matthew Wittman and Carol Wittman, regarding the defendants' purchase of the plaintiffs' shares of stock in Intense Movers, Inc. (company). On appeal, the defendants claim that the trial court erred in granting the plaintiffs' motion to enforce the settlement agreement because the defendants' ability to obtain third-party financing to fund the purchase of the plaintiffs' shares was a contingency of the settlement agreement. We affirm the judgment of the trial court.

The following facts and procedural history, obtained from our review of the record and the court's memorandum of decision, inform our review of the issues in the appeal. The four parties are the sole shareholders of the company. The plaintiffs brought this action against the defendants, alleging in their amended complaint, among other things, breach of fiduciary duty, unjust enrichment, civil theft, and conversion, on the basis of their claims that the defendants mismanaged the finances of the company. The plaintiffs sought, inter alia, (1) pursuant to General Statutes § 33-896 (a) (1), a judicial dissolution of the company, (2) pursuant to General Statutes § 33-897 (c), the appointment of a receiver pendente lite, (3) pursuant to General Statutes § 33-898, the appointment of a permanent receiver, and (4) damages. On February 27, 2017, the defendant Alexander Leute filed with the court, pursuant to General Statutes § 33-900 (b), a notice of election to purchase the plaintiffs' shares of the company.

On October 19, 2018, the parties executed a memorandum of understanding resolving the primary issues of their dispute, which required in part that the defendant Alexander Leute make payments over time to the plaintiffs in exchange for receiving the plaintiffs' shares in the company. The memorandum of understanding provided that the parties would enter into a more detailed settlement agreement that would provide, among other things, the necessary terms to effectuate the plaintiffs' transfer of their shares to Alexander Leute. As the parties negotiated the additional terms of the settlement agreement, the defendants repeatedly requested various new terms to which the plaintiffs agreed. On November 26, 2018, the parties appeared to have reached a full settlement, and the plaintiffs waited for the defendants to sign the written settlement agreement and for Alexander Leute to send his first payment of $150,000 toward his purchase of the plaintiffs' shares.

As the defendants continued to delay the signing of

the settlement agreement and after Alexander Leute missed the first payment date as set forth in the agreement, the plaintiffs, on December 26, 2018, filed a motion to enforce the memorandum of understanding as supplemented by the settlement document (motion to enforce). In the motion to enforce, the plaintiffs alleged that the parties had reached a settlement on October 19, 2018, as evinced by the signed memorandum of understanding, which was revised and finalized on November 26, 2018, as evinced by the settlement agreement. The plaintiffs claimed that, despite the defendants' written assent to the terms of the settlement agreement, which had been drafted by the plaintiffs' attorney, Richard S. Order, the defendants then refused to sign the settlement agreement and Alexander Leute refused to make his initial payment of $150,000. The plaintiffs requested that the court issue an order (1) declaring the settlement agreement to be enforceable, (2) directing the defendants to sign, within ten days, the settlement agreement and the implementation paperwork necessary to the settlement agreement, and (3) directing Alexander Leute to pay the $150,000 initial payment and any other missed payments within ten days and to begin making the future monthly and annual payments in accordance with schedules set forth in the settlement agreement.

Attached to the plaintiffs' memorandum in support of their motion to enforce was an affidavit of Attorney Order attesting to the facts surrounding his negotiation of the settlement agreement with the defendants and authenticating the many documents that were attached to his affidavit. Those documents included the memorandum of understanding reached and signed by Attorney Order and the defendants, numerous e-mails between Attorney Order and the defendants, e-mails between Alexander Leute and a banker that Alexander Leute had forwarded to Attorney Order, and the settlement agreement with supporting documents that Attorney Order had negotiated with the defendants on behalf of the plaintiffs.

On January 3, 2019, Alexander Leute filed an objection to the motion to enforce, arguing that he never had the funds to buy out the plaintiffs, despite having approached several different lenders. In response, the plaintiffs submitted a supplemental affidavit provided by Attorney Order, in which he attested that the defendants never requested that receipt of a loan be a condition precedent to the settlement agreement. William R. Leute III responded by arguing that the "settlement was always conditional upon Alexander Leute raising the necessary $150,000 funds . . . ." The defendants did not submit an affidavit, but did submit copies of various e-mails between the parties that were dated before the memorandum of understanding was executed.

On January 28, 2019, the court held a hearing on the

plaintiffs' motion to enforce. During that hearing, the court carefully explained the purpose of the hearing, and it clarified that the defendants, who previously had been represented by counsel, were now self-represented. The court then explained the purpose of an *Audubon* hearing; see *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, 225 Conn. 804, 812, 626 A.2d 729 (1993) (*Audubon*) (clear and unambiguous settlement agreement is enforceable summarily if parties reached agreement after commencing litigation); and it explained that the parties were allowed to present sworn testimony and evidence during the hearing. Attorney Order stated on the record that he was available for cross-examination concerning the contents of his affidavit if the defendants wanted to examine him. Although considerable argument was presented by both parties,[2] neither party presented sworn testimony and the defendants did not cross-examine Attorney Order. The defendants did offer into evidence printouts of two e-mails, however, to which the plaintiffs offered no objection, and the court entered them as full exhibits. The plaintiffs relied on the submissions attached to their motion to enforce, to which the defendants voiced no objection.

During oral argument, the trial court asked Alexander Leute about his filing with the court, in February, 2017, an election to purchase shares, and it asked him whether he was "on the hook for [that]," to which he responded, "Correct, that's correct." The court also explained to the defendants that "the fact that you may need to obtain financing doesn't necessarily mean that the need to obtain financing is automatically a contingency if you don't say so. And that's part of the problem I think I am going to have to deal with in this case because you're saying we talked about the fact that we are looking for a loan, but you never put it expressly into the agreement." Alexander Leute stated that he understood. The court then asked him if this was "a fair summary of where we are," to which he responded, "That's—that's an exactly fair summary, Your Honor." Alexander Leute also stated that he had not understood the enforceability of the memorandum of understanding and that he "had not done [his] due diligence . . . ."

Attorney Order argued that the trial court should enforce the settlement agreement, require the defendants to sign it, and require the defendants to sign all the necessary attachments. The court asked Attorney Order whether the judgment alone would be sufficient or if the court necessarily had to order the defendants to sign the documents. Attorney Order stated that the judgment likely was enough. See footnote 4 of this opinion. At the end of the hearing, the court stated that it would take the matter on the papers.

On May 20, 2019, the court, guided in part by *Kidder* v. *Read*, 150 Conn. App. 720, 93 A.3d 599 (2014), rendered

judgment granting the plaintiffs' motion to enforce. In its memorandum of decision, the court stated that it thoroughly had reviewed the communications between the defendants and the plaintiffs, noting the signed memorandum of understanding and the multiple e-mail exchanges. The court stated that the defendants frequently had requested new changes to the parties' settlement agreement and that Attorney Order had addressed and resolved each new request. The court also stated that a frequent issue in the e-mail exchanges was the date upon which Alexander Leute would get the money to cover the initial $150,000 payment. In an e-mail dated November 26, 2018, Alexander Leute told Attorney Order, after making a request for another change to the settlement agreement regarding the number of company shares to be issued, that "[e]verything else looks good. *I will have this signed and sent over to you ASAP once that small change is made and I will have the check mailed out as well.*" (Emphasis added.) Attorney Order made the change requested that same day, and then e-mailed a new copy of the settlement agreement to the defendants for their signatures.

In its memorandum of decision, the court stated that, although Alexander Leute frequently referred to the need to obtain financing, Attorney Order's affidavit and the e-mail documents attached thereto, convinced it that "at no time was [Alexander Leute's] success in getting a loan identified as a condition for the [settlement] agreement." The court pointed to a specific e-mail in which Alexander Leute told Attorney Order that he had "several options for producing the initial payment and [that he was] on course for having the check for [him] by the last week of November but if something goes sideways I don't want to [be] forced to take out a high interest loan in order to produce the funds by the 16th." (Internal quotation marks omitted.) The court stated that the evidence showed that Alexander Leute "never made known to the plaintiffs, at the time of the execution of the memorandum of understanding or even in the month (plus) thereafter, that the [settlement] agreement was contingent upon him getting financing for the initial $150,000 payment. [Alexander Leute] has pointed to no communication in which he generally referred to obtaining financing as a condition, much less identifying the specific terms of financing . . . that would be deemed acceptable to him."

The court also stated that, although the memorandum of understanding may have been incomplete as to all material terms, the settlement agreement " 'filled in the blanks' as to those issues . . . ." Additionally, the court explained that Alexander Leute had committed to purchasing the plaintiffs' shares in February, 2017, when he filed with the court a notice of election to purchase shares pursuant to § 33-900 (b),[3] that he never had attempted to withdraw that election, and that none of the shareholders had an objection to the purchase. On

the basis of the record before it, the court concluded that "[t]he only basis on which the defendant[s] [have] challenged the [settlement] agreement is [Alexander Leute's] contention that there was an implied condition of his obtaining financing, but, under the circumstances of this case, including his statutory election to purchase the plaintiffs' shares, his commitment to a settlement some [twenty] months later (memorandum of understanding), and his failure ever to identify financing as an intended contingency for the settlement until after the plaintiffs had indicated an intention to seek enforcement of the settlement [agreement], the court believes it would be inequitable not to approve the settlement [agreement], and, therefore, the court finds that it is equitable to permit the settlement [agreement] to go forward. . . . [T]he court has concluded that there was an enforceable settlement agreement between the parties as embodied in the memorandum of understanding, and, if not enforceable at that stage, then final and enforceable as modified by the subsequent negotiations of the parties and embodied in the final version of the formal settlement agreement drafted by the plaintiffs." Accordingly, the court rendered judgment in favor of the plaintiffs, granting their motion to enforce the settlement agreement. The defendants then filed the present appeal.[4]

On appeal, the defendants claim that the trial court erred in granting the plaintiffs' motion to enforce on the ground that Alexander Leute's ability to obtain third-party financing always was a contingency of the settlement.[5] The defendants set forth various arguments in support of their claim. First, they argue that the e-mails in the record "predat[ing] the October 19, 2018 [memorandum of understanding]" demonstrate that Alexander Leute repeatedly told the plaintiffs that he needed to obtain financing before they could settle their dispute[6] and that the court ignored these e-mails, and, instead, considered only the e-mails "between the Leutes and Attorney Order to establish that the parties agreed to the terms of the unsigned settlement agreement." Second, they argue that "*Audubon* requires clear and unambiguous language and *also that there is no dispute about the terms*." (Emphasis in original.) They contend that there is a dispute in this case regarding whether obtaining financing was a condition precedent. Finally, the defendants argue that the court modified an essential term of the settlement agreement by selecting arbitrary payment dates that differed from those set forth in the settlement agreement.[7] We are not persuaded by the defendants' arguments.

"A trial court has the inherent power to enforce summarily a settlement agreement as a matter of law when the terms of the agreement are clear and unambiguous. . . . Agreements that end lawsuits are contracts, sometimes enforceable in a subsequent suit, but in many situations enforceable by entry of a judgment in the

original suit." (Citations omitted; internal quotation marks omitted.) *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, supra, 225 Conn. 811.

As was the case in *Kidder*, "[t]he issue on appeal is whether the communications between the parties constituted an enforceable settlement agreement. . . . Because the defendant[s] [challenge] the trial court's legal conclusion that the [settlement] agreement was summarily enforceable, we must determine whether that conclusion is legally and logically correct and whether [it finds] support in the facts set out in the memorandum of decision. . . . In addition, to the extent that the defendant[s'] claim implicates the court's factual findings, our review is limited to deciding whether such findings were clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *Kidder* v. *Read*, supra, 150 Conn. App. 732–33.

"A settlement agreement is a contract among the parties. . . . A contract is not made so long as, in the contemplation of the parties, something remains to be done to establish the contractual relation. The law does not . . . regard an arrangement as completed which the parties regard as incomplete. . . . In construing the agreement . . . the decisive question is the intent of the parties *as expressed*. . . . The intention is to be determined from the language used, the circumstances, the motives of the parties and the purposes which they sought to accomplish." (Citation omitted; emphasis added; internal quotation marks omitted.) Id., 734. Furthermore, "[p]arties are bound to the terms of a contract even though it is not signed if their assent is otherwise indicated." (Internal quotation marks omitted.) *Aquarion Water Co. of Connecticut* v. *Beck Law Products & Forms, LLC*, 98 Conn. App. 234, 239, 907 A.2d 1274 (2006).

Finally, "[t]he fact that parties engage in further negotiations to clarify the essential terms of their mutual undertakings does not establish the time at which their undertakings ripen into an enforceable agreement . . . [and we are aware of no authority] that assigns so draconian a consequence to a continuing dialogue between parties that have agreed to work together. We know of no authority that precludes contracting parties from engaging in subsequent negotiations to clarify or to modify the agreement that they had earlier reached." *Willow Funding Co.* v. *Grencom Associates*, 63 Conn. App. 832, 843–44, 779 A.2d 174 (2001). "More important

. . . [when] the general terms on which the parties indisputably had agreed . . . included all the terms that were essential to an enforceable agreement . . . [u]nder the modern law of contract . . . the parties . . . may reach a binding agreement even if some of the terms of that agreement are still indefinite." Id., 844; see also *Hogan* v. *Lagosz*, 124 Conn. App. 602, 616, 6 A.3d 112 (2010), cert. denied, 299 Conn. 923, 11 A.3d 151 (2011).

In the present case, the court found, and the record confirms, that Alexander Leute, on February 27, 2017, filed with the court a notice of election to purchase the plaintiffs' shares. It also found that the parties to this case were the sole shareholders and that none of them opposed his election. Additionally, Alexander Leute never sought to withdraw that election. The court also found that, on October 19, 2018, the parties executed a memorandum of understanding, "facially resolving all of their disputes" and it found that the memorandum of understanding was supplemented and modified by the settlement agreement that subsequently was negotiated between the defendants and the plaintiffs' attorney, as had been anticipated by the specific language in the memorandum of understanding.[8] Nowhere in the memorandum of understanding or settlement agreement is any financing contingency set forth. Consequently, the court aptly described the issue in dispute as whether there was a condition precedent to the settlement agreement, which was not incorporated into the written words of the memorandum of understanding and the supplements thereto. The record reveals that, during the January 28, 2019 hearing, the parties agreed that this was the issue to be decided by the court.

In its memorandum of decision, the court stated that it considered the executed memorandum of understanding and the extensive subsequent written communications between the parties.[9] In particular, the court considered and discussed the communications admitted into evidence and relied on by the defendants. The court first noted that the memorandum of understanding requires specific payments over time to the plaintiffs to effectuate the purchase of the plaintiffs' interest in the company, and it specifically provides that the terms of the memorandum of understanding will be set forth more fully in another written agreement. Both defendants signed the memorandum of understanding and Attorney Order signed it on behalf of the plaintiffs. The court specifically stated that, "[f]acially, the [memorandum of understanding] sets forth the material terms of what appears to be a comprehensive agreement, intended to resolve all issues presented in the litigation." The court also stated, however, that it recognized that the memorandum of understanding provided that the "scope of acts of default would be determined after the signing of the memorandum of understanding," and that this " 'to be determined' " term, arguably, could

preclude a determination that the memorandum of understanding was a final agreement. The court further determined, however, that the subsequent agreement drafted by the plaintiffs and agreed to by the defendants, which " 'filled in the blanks' " as to those issues, cured any possible defect in the original memorandum of understanding. The defendants do not claim otherwise. In fact, they conceded at oral argument before this court that the final settlement agreement presented to them for execution set forth the parties' entire agreement, except for the purported financing contingency.

As to the purported financing contingency, after reviewing the written communications provided, including specifically those relied on by the defendants, the court found that Alexander Leute "never made known to the plaintiff[s] . . . that the agreement was contingent upon him getting financing for the initial $150,000 payment. The defendant[s] [have] pointed to no communication in which [they] generally referred to obtaining financing as a condition . . . . [T]he tenor of the e-mails provided—even those provided by the defendant[s]—was that the financing was a process underway with only some level of uncertainty as to precisely when the financing would be obtained. . . . Never was there a mention of conditioning the settlement [agreement] on whether funding could be obtained." Furthermore, the court found that "the fact that the parties had continued to fine-tune the agreement, as reflected by the e-mail exchanges submitted to the court, does not undercut the enforceability of the agreement reached on October 19, 2018."

These facts, combined with the notice of election to purchase shares that Alexander Leute filed with the court, persuaded the trial court that "there was an enforceable settlement agreement between the parties as embodied in the memorandum of understanding, and, if not enforceable at that stage, then final and enforceable as modified by the subsequent negotiations of the parties and embodied in the final version of the formal settlement agreement drafted by the parties. . . . [T]he case effectively was settled upon the signing of the memorandum of understanding, with ongoing negotiations being a process of permissible fine-tuning." The defendants have provided us with neither law nor argument that persuades us that the court was clearly erroneous in its factual findings or incorrect in its legal conclusions.

In particular, the defendants' principal argument that the court ignored their communications, in which they stressed the need for Alexander Leute to obtain financing to complete any settlement and, instead, relied solely on the communications submitted by the plaintiffs, is without merit. As set forth previously in this opinion, the court, in its memorandum of decision, discussed the communications submitted to it by both the

plaintiffs and the defendants. Furthermore, it acknowledged that the defendants referenced Alexander Leute's pursuit of financing in a number of the communications. What it refused to do, though, was infer from those communications an unexpressed intent on the part of the defendants that obtaining financing was a contingency to any settlement. Our law is quite clear—unexpressed intent is not relevant. See *Perruccio* v. *Allen*, 156 Conn. 282, 285, 240 A.2d 912 (1968) ("an unexpressed intent is of no significance"); *Rayhol Co.* v. *Holland*, 110 Conn. 516, 524, 148 A. 358 (1930) ("if . . . documents constitute a complete agreement, we cannot regard any unexpressed intent but only that which in them does find expression"); *Dunn* v. *Etzel*, 166 Conn. App. 386, 399, 141 A.3d 990 (2016) ("the clear, unambiguous language of the release rendered immaterial the plaintiff's unexpressed subjective intent"); see also 15A C.J.S. Compromise and Settlement § 8 (2020 Rev.) ("A compromise agreement must be binding on both parties so that an action may be maintained by either to enforce it. The mutual assent requirement of a settlement agreement cannot be defeated by the unexpressed subjective intent of one of the parties . . . ." (Footnote omitted.)). Consequently, what mattered to the court was what the parties wrote in their settlement agreement, not what they may have intended but never expressed. What they actually wrote was clear.

On February 27, 2017, Alexander Leute filed with the trial court a notice of election to purchase the plaintiffs' shares to which no shareholder had an objection. On October 19, 2018, the defendants signed the memorandum of understanding, which provided that it contained "the essential terms of a settlement agreement between the [plaintiffs] and the [defendants] that will form the basis for a written agreement that will be prepared and will elaborate in fuller detail on all the terms." The memorandum of understanding also contained the payment terms, which were to begin on December 6, 2018, and provided for the transfer of ownership of the plaintiffs' interests in the company. It contained no contingency for financing. During negotiations of the final settlement agreement, the defendants requested multiple changes, most of which came in sporadically, but all of which were addressed and reconciled by Attorney Order. *None of the requested changes concerned inserting language regarding the ability of the defendants to obtain financing as a contingency of the settlement agreement.* In a November 21, 2018 e-mail, Attorney Order encouraged the defendants to have an attorney review the documents, and stated that they should do so soon so that they could remain on schedule.

On November 26, 2018, after Attorney Order reconciled all of the defendants' requested changes and e-mailed updated settlement documents to the defendants, the defendants, in an e-mail sent at 10:47 a.m.,

stated that they had one additional small change they wanted regarding the number of shares to be transferred and that they would sign the settlement agreement documents and send them back "ASAP," and forward payment, after that change was made. This particular communication was flatly inconsistent with the defendants' subsequent claim that their execution of the agreement was contingent on obtaining financing. Attorney Order made the requested change and, in an e-mail sent at 1:23 p.m., also on November 26, 2018, sent the final settlement agreement and all supporting documents to the defendants for their signatures and for Alexander Leute's initial $150,000 payment. We agree with the court's conclusion that at that point there was no question that the parties had reached a fully enforceable settlement agreement.

These facts also dispose of the defendants' argument that the settlement agreement was ambiguous as to the existence of a financing contingency. We fail to see how an agreement that the defendants acknowledged was final and ready for execution "ASAP" following one last minor change can be ambiguous as to a term not included in the agreement. There is nothing in the settlement agreement that remotely suggests that it was contingent on the defendants obtaining financing, and we will not impute ambiguity into an agreement that the defendants acknowledge is otherwise clear and unambiguous. Accordingly, we conclude that the defendants have failed to establish that the court improperly enforced the settlement agreement, which consisted of the signed memorandum of understanding as supplemented by the unsigned settlement document with its attachments.

As to the defendants' final argument that the court improperly revised the settlement agreement by setting forth new payment dates, we conclude that the adjustments were necessary to implement the settlement agreement because at least one of the payment dates already had passed. Furthermore, the adjustments clearly inure to the benefit of Alexander Leute by giving him additional time to pay, rather than ordering him to make up any and all of the missed payments immediately.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The named defendant, Intense Movers, Inc., is not a party to this appeal. Accordingly, all references to the defendants are to Alexander Leute and William R. Leute III only.

[2] The parties, without objection, also made many unsworn representations of fact during the hearing. Unless those representations could be considered concessions of the party making the assertion, we will not consider them in this opinion. It does not appear that the trial court considered them in its written memorandum of decision. See *Federal National Mortgage Assn.* v. *Buhl*, 186 Conn. App. 743, 751, 201 A.3d 485 (2018) ("Before testifying, every witness shall be required to declare that the witness will testify truthfully, by oath or affirmation administered in a form calculated to awaken the [witness'] conscience and impress the [witness'] mind with the duty to

do so. . . . Unsworn representations of counsel are not, legally speaking, evidence upon which courts can rely." (Citation omitted; internal quotation marks omitted.)), cert. denied, 331 Conn. 906, 202 A.3d 1022 (2019); see also *Presidential Village, LLC* v. *Perkins*, 332 Conn. 45, 53 n.9, 209 A.3d 616 (2019) (plaintiff bound by concession made during oral argument before trial court); *Housing Authority* v. *Pezenik*, 137 Conn. 442, 448, 78 A.2d 546 (1951) ("[a] party is bound by a concession made during the trial by his attorney").

[3] General Statutes § 33-900 provides in relevant part: "(a) In a proceeding under subdivision (1) of subsection (a) of section 33-896 to dissolve a corporation, the corporation may elect or, if it fails to elect, one or more shareholders may elect to purchase all shares owned by the petitioning shareholder at the fair value of the shares. An election pursuant to this section shall be irrevocable unless the court determines that it is equitable to set aside or modify the election.

"(b) An election to purchase pursuant to this section may be filed with the court at any time within ninety days after the filing of the petition under subdivision (1) of subsection (a) of section 33-896 or at such later time as the court in its discretion may allow. If the election to purchase is filed by one or more shareholders, the corporation shall, within ten days thereafter, give written notice to all shareholders, other than the petitioner. The notice must state the name and number of shares owned by the petitioner and the name and number of shares owned by each electing shareholder and must advise the recipients of their right to join in the election to purchase shares in accordance with this section. Shareholders who wish to participate must file notice of their intention to join in the purchase no later than thirty days after the effective date of the notice to them. All shareholders who have filed an election or notice of their intention to participate in the election to purchase thereby become parties to ownership of shares as of the date the first election was filed, unless they otherwise agree or the court otherwise directs. After an election has been filed by the corporation or one or more shareholders, the proceeding under subdivision (1) of subsection (a) of section 33-896 may not be discontinued or settled, nor may the petitioning shareholder sell or otherwise dispose of his shares, unless the court determines that it would be equitable to the corporation and the shareholders, other than the petitioner, to permit such discontinuance, settlement, sale or other disposition. . . ."

[4] The plaintiffs, thereafter, filed a motion with the trial court requesting that it reconsider or allow reargument as to whether the court could and should order the defendants to sign the settlement agreement and the documents attached to it. The court considered the motion but denied relief stating that it did not believe that it had the authority to order the defendants to sign the documents. It also stated that it believed that the judgment of the court specifically enforcing the settlement agreement was sufficient. The plaintiffs do not challenge that ruling on appeal.

[5] During oral argument before this court, the defendants conceded that the unsigned settlement agreement contained all material terms with the exception of the purported financing contingency.

[6] Copies of those e-mails, which were attached to William R. Leute III's reply to the plaintiffs' supplemental affidavit in support of their motion to enforce, were not supported by an affidavit. Additionally, the e-mails demonstrate that Alexander Leute informed Attorney Order that he needed more time to obtain financing and that he had "been working relentlessly to raise the capital [needed] to settle this case." The e-mails contain neither a request nor a requirement that obtaining a certain type of financing be a condition precedent to settlement.

[7] The defendants also contend that the court improperly failed to find the terms of the settlement oppressive or that they were agreed to under duress. We have reviewed the defendants' oppositions to the motion to enforce, in which each of them separately argued only that their settlement agreement was contingent on their obtaining financing, and we can ascertain no claim of this nature raised in either of these memoranda. Furthermore, it is clear that the court found the terms of the settlement agreement and Alexander Leute's notice of election to purchase shares to be fair and equitable.

[8] The memorandum of understanding provides in part that it "outlines the essential terms of a settlement agreement between [the plaintiffs and the defendants] that will form the basis for a written agreement that will be prepared and will elaborate in fuller detail on all the terms." It also provides that "[o]n or before December 6, 2018, [Alexander Leute] will pay the [plaintiffs] $150,000 . . . through check or wire transfer . . . . [Alexander

Leute] will also pay the [plaintiffs] an additional $325,000 . . . over time . . . . On or before the 17th day of each month, beginning on January 17, 2019, and continuing until the [b]alance is paid in full, [Alexander Leute] will begin paying the [b]alance with monthly payments of $4000 . . . automatically deducted from the Intense Movers Bank of America account and transferred to an account the [plaintiffs] will designate.'' The memorandum of understanding also sets forth additional payment and transfer terms, and it provides that the parties would "submit the terms of the settlement to the [c]ourt . . . for its approval pursuant to . . . § 33-900 (b)."

[9] The court's memorandum of decision makes no reference to the unsworn oral representations of Attorney Order and the defendants as to what occurred during their settlement discussions. Thus, we conclude that the court properly did not give any evidentiary weight to these representations, and the parties do not argue otherwise.

————————————————————